# SUPREME COURT.

## The People agt. John White, jun.

Under the act entitled " of voluntary assignments by a debtor imprisoned in execution in civil causes," (*Art.* 6, *ch*, 5, *part* 2, *of the Revised Statutes*,) the policy and spirit of the act, and of all insolvent laws to discharge debtors from imprisonment, are to discharge them on giving up honestly all their property to their creditors.

. If the affidavit or petition of the applicant is in any respect *untrue*—if the account of his property is in any essential respect incorrect, in a matter or manner implying that he purposely concealed any portion of his property, and did not intend to make a full and complete disclosure in respect to it, but designedly kept back something for the future benefit of himself or family, or intentionally withheld any important or proper information in respect to its condition, or in respect to charges or liens thereon, then his *proceedings* will not be *just and fair* within the true intent of this statute.

In applying this principle to the present case, the applicant's proceedings were held not to be *just* and *fair*, and that his application to be discharged should be denied.

The defendant was a public defaulter as county treasurer to a large amount, ($32,000,) and had omitted to account or explain in any manner as to what had become of the money ; and besides he had about the time of his failure confessedly about $60,000 of property, most of which was real estate, which had

been shortly previous conveyed by him to two friends; most of it held by a brother who had confessedly paid nothing for it, and in his inventory annexed to his petition, his property was stated at a trifling amount.

*Monroe Special Term, Aug.,* 1857.

APPLICATION for a discharge from imprisonment on execution. The defendant presented a petition under article 6, of chap. 5, part 2, of the Revised Statutes, entitled " of voluntary assignments by a debtor imprisoned in execution in civil causes," stating that he is and has been, since the 25th of November, 1856, confined in the jail of Monroe county, upon an execution issued out of this court, in this action, upon a judgment for the sum of $29,193.35, recovered Sept. 10, 1856. With such petition was presented an inventory of the estate of the petitioner annexed thereto, and the same was verified by the affidavit of the petitioner, in the form prescribed by the statute. On the presentation of such petition, with due proof of service thereof, with the notice required. by the statute, the applicant was brought into court ; and, on application for his discharge, counsel appearing on behalf of the plaintiff to oppose the same, it was referred to a referee to take the examination of the petitioner and his wife, and of such other witnesses as should be produced before him by either party. On the coming in of the report of the referee, with the evidence taken by him, the application for the discharge was renewed, and opposed upon grounds which will sufficiently appear in the opinion.

W. F. COGSWELL, *for petitioner.*

O. HASTINGS *and* SCOTT LORD, *for plaintiffs, and supervisors of Livingston.*

E. DARWIN SMITH, Justice. The petitioner is a public defaulter. The proofs show that the judgment upon which he is imprisoned, was recovered against him as treasurer of the county of Livingston, for the proportion of the state tax of 1855, assessed upon the said county, and duly collected and paid to the defendant according to law, and which it was his

duty to have paid to the state treasurer on the 1st of day March, 1856.

The warrants of the collectors of taxes being returnable on the first day of February, and the collectors being bound to pay to the county treasurer the moneys in their hands, and settle with him in respect to such moneys within one week after that time, it is to be presumed that the defendant received in the month of February, and had the whole amount of this tax in his hands on the first of March, 1856, or within a few days previously. Being in default in making such payment, it was the duty of the comptroller, on the first of May, to require him to make payment in thirty days, which was doubtless done. In June, 1856, the petitioner, by his own account, was possessed of real and personal estate, worth about $60,000 dollars. In July he offered to turn out real estate to the supervisors, which is represented to be worth $40,000 over and above all incumbrances thereon, all of which however had previously been, by absolute deeds, conveyed to an indorser who was liable for him to the amount of $13,000, having other adequate security for most of the amount.

The transactions of the defendant in transferring this large amount of property, and his subsequent conduct in controlling, sacrificing and disposing of it, as disclosed in the proofs, are grossly fraudulent and dishonest. This is quite palpable, and if the plaintiff was seeking to overhaul all these transactions, and reach the property or its proceeds, the court would doubtless set aside all or most of the numerous conveyances and transfers detailed in such proofs. But no such questions are before me ; and the only pertinency there is in all the evidence disclosing the frauds of this defendant in disposing of his property, depends upon the question whether or not it legitimately bears upon the point to be decided on this application.

The statute declares that if the court is satisfied that the petition and account of the applicant are correct, and that his "*proceedings are just and fair,*" it shall order an assignment to be made of his property, and that he be discharged from imprisonment.

What is the precise force and meaning of the words of the statute, "*proceedings just and fair*," seems to be a good deal in doubt, and was much discussed on the argument. The same phraseology occurs in the act to abolish imprisonment for debt, and has there, as well as in this statute, doubtless embarrassed many by its indefiniteness. The word *proceeding* ordinarily relates to the *forms* of law, to the modes in which judicial transactions are conducted. It seems to have been used inartificially in this place, and in an untechnical sense. It has no appropriate connection with the words *just* and *fair*. These words apply to the moral qualities of acts, dealings and transactions, but not fitly to formal legal proceedings. That something more was meant by the statute, in the use of these words than what relates to the mere form in which the applicant's papers are prepared in such cases, is indicated by the preceding part of the sentence referring expressly to the *petition* and *account*. The form of the petition is prescribed in section 4, and the form of the oath in section 5. These formalities must be complied with, but the requirement that the "*proceedings must be just and fair*," must obviously refer to something extrinsic to the formalities of the petition, account, schedule, or affidavit. It cannot relate to the general dealings and transactions of the applicant before his imprisonment, because under the non-imprisonment act, and now, under the Code, it is a ground of arrest and imprisonment, that the defendant fraudulently contracted the debt in question, or has fraudulently concealed or disposed of his property. The very ground on which the original arrest and imprisonment was authorized, as in this case, where the debt was contracted in a fiduciary capacity, cannot present the ground on which the court may adjudge the proceedings of the imprisoned debtor not *just* and *fair*, and refuse his discharge. The allegation that the proceedings of the debtor are not *just* and *fair*, must be based upon and refer to some other class of facts or transactions of the debtor.

The policy and spirit of the insolvent law is, to discharge debtors from imprisonment on their giving up honestly all their property to their creditors. The affidavit which applicants

under this article are required to make is, I think, a key to the meaning of the words in the connection in question. It is as follows : "I (the petitioner) do swear that the within petition and account of my estate and of the charges thereon, are in all respects *just* and *true*, and that I have not at any time or in any manner, disposed of or made over any part of my property, with a view to the future benefit of myself or my family, or with an intent to injure or defraud any of my creditors."

This affidavit must be *true* in its letter and spirit, or the proceedings of the applicant cannot be *just* and *fair*, within the sense and meaning and true intent of the statute. The applicant must annex to his petition a *just* and *true* account of his estate and of the charges thereon. The court must be satisfied on this point, that the exposition of his affairs which the petitioner makes, is in all respects *full, honest* and *truthful,* that nothing essential for the creditor to know, has been intentionally kept back, concealed or suppressed.

And in respect to the residue of the affidavit, that " I have not at any time or in any manner disposed of or made over any part of my property, with a view to the future benefit of myself or my family, or with an intent to injure or defraud any of my creditors," the court must be satisfied that no such disposition of property has at any time been made by the debtor, *which is then in force or subsisting;* that no provision for the future use of the debtor or his family, has been made of any property owned by the debtor, at the time when the debt which formed the basis of the imprisonment was contracted. The word *future* in the affidavit must relate to the *time* of the *making the affidavit,* and not to any other time. The affidavit refers to property disposed of with a view to the *future benefit,* that is, benefit after his discharge or after the application. The meaning is, that nothing in the shape of property, rights or interest in property, legal or equitable, existing at the time of the application, shall be kept back or withheld from his creditors. This is the condition upon which the law interposes to discharge the debtor from imprisonment. If his affidavit is in any respect *untrue*—if the account of his property is in any

The People agt. White.

essential respect incorrect, in a matter or manner implying that the debtor purposely concealed any portion of his property, and did not intend to make a full and complete disclosure in respect to it, but designedly kept back something for the future benefit of himself or family, or intentionally withheld any important or proper information in respect to its condition, or in respect to charges or liens thereon, then his proceedings will not be *just* and *fair* within the true intent of this statute.

But if the court is satisfied that the applicant has concealed nothing in respect to his property or its condition, and honestly and truly proposes to purchase his freedom from imprisonment by a complete surrender of all his property, rights and interests to his creditors, it is the duty of the court to discharge him, however dishonest or improper his conduct may have previously been in other respects, or in other connections and at other times.

In the application of these principles to the present case, I think the defendant's proceedings have not been *just* and *fair*, and that his application to be discharged should be denied upon at least two grounds.

First. Being a public defaulter in the sum of over $32,000—of which $28,000, the amount for which the judgment in this action was recovered, came into his hands as county treasurer, all at or about the same time, and must all have been in his hands at or about the time he first made default in making payment, according to his duty, to the state treasurer—he does not embrace any of such money or its proceeds in his inventory, or in any manner account for the same, and on his examination, when repeatedly inquired of in respect to it, refused to make any explanation in regard to it, or rather declared his inability to do so. I should be satisfied to place my refusal to discharge the defendant upon this *single ground*, that he has not accounted at all for this large amount of money so recently in his hands, and made no explanation in respect to it, or its misappropriation, and on his pretence of his inability to do so. I cannot credit this statement. This defendant can tell, in my opinion, what he has done with the $28,000, or most of it, received for the state tax in Febru-

ary, 1856, if not with the $4,000 belonging to infants' fund, in sacred deposit in his hands. The applicant does not, in this particular, make a full and complete disclosure, to my satisfaction, in respect to his property and effects. Something, I am well convinced, is intentionally kept back and suppressed, in respect to this money.

But, secondly. The defendant had about the time of his failure, confessedly about $60,000 of property. The inventory of property annexed to his petition, contains but a trifling amount of property, scarcely anything except such as is exempt from execution. All this property has been transferred to one or two friends—most of it is still held by a brother, who had confessedly paid nothing for it; some of it has been sacrificed, but a large amount of it was in the hands of the parties to whom he had conveyed it or transferred it, or caused it to be conveyed or transferred at the time of the making of this application. It is true he says he did not refer to it or mention it or any of it in his inventory, because he supposed that he had no interest in it, having conveyed it by absolute deeds; but this is obviously mere pretence, for ever since its conveyance he has been practically dealing with it, trading it off, and managing and controlling it as his own. And of the debt to Johnson, to whom it was mostly transferred, to secure him against an indorsement of $13,000, $6,000 has been paid, and the remainder renewed by White himself with new paper. To pretend that property to so large an amount, transferred to secure such a debt, was not embraced in his inventory, because he supposed he had no interest in it, is not to be credited. He has clearly a large equitable interest in this property in the hands of Johnson and his brother Joseph, and the omission to mention it or refer to it in any manner in the account of his estate, implies a purpose to cover up and conceal his property, affairs and interests, from his creditors, which is most obviously the converse of being *just* and *fair* in his proceedings, within the terms and true intent of the statute.

In a case like this, where the applicant is charged in execution for a large amount, and the cause or ground of his arrest

and imprisonment, is his defalcation as a public officer in respect to public moneys intrusted to his keeping, the statute providing for the discharge of imprisoned debtors, should be complied with by the applicant to its strictest letter and spirit, and the court should be fully satisfied before it grants a discharge, that the applicant 'most sincerely purposed to make to the public, for the great wrong he had committed, all the atonement in his power, by a full, complete and perfect surrender of all his property, and a most frank and explicit disclosure of its situation, of the liens upon it, and of all his contingent rights and interests therein.

The proofs in this case have entirely failed to satisfy me that the petitioner made this application with any such purpose or intention ; and I must then hold that his " proceedings are not *just* and *fair*," within the terms, meaning and intent of the statute, and his application for his discharge must be denied.