IN THE MATTER OF PAUL ANDRIOT, AN IMPRISONED DEBTOR.

In an application for a discharge under the act to abolish imprisonment for debt, it must appear by the defendant's petition either that a suit had been commenced, or a judgment recovered, against him by the prosecuting creditor.

A schedule, setting forth an account of the petitioner's estate, as it existed at the time when he was committed under the act, is defective. It should contain an account of his estate as it existed at the time of his *arrest.* But the officer to whom the application is made can allow the schedule to be ·amended in this respect, if satisfied that the omission was unintentional, or arose from a misconception of the statute.

If an application is made for a discharge within the thirty days allowed, and is denied upon the merits, it cannot be renewed. Whether, if denied for defect of form, it may be renewed before another officer, *query ?*

If the petitioner has been committed under the act for fraudulently disposing of his property, he cannot be discharged from imprisonment by making the assignment of his property, provided for by the sixteenth section of the act. The fraudulent disposition of property referred to in this section, is not a fraudulent disposition between the time of his conviction and the application for a discharge from imprisonment. This provision for a discharge applies only to cases where there has been no fraudulent concealment, removal, or disposition of property by the debtor with intent to defraud creditors. The object of the act was humane and remedial; to relieve from imprisonment the honest but unfortunate debtor, who had no longer the means of satisfying his creditors, and a certain class of fraudulent debtors were excepted from its operation, who may be relieved under the Code, in cases of inability to endure the imprisonment, or to perform the act required, upon such terms as may be just.

Review of the history of legislation for the relief of debtors, and of the state of the cases anterior thereto.

In the matter of Andriot.

The petitioner, Andriot, having been convicted, under the act to abolish imprisonment for debt or to punish fraudulent debtors, of disposing of his property with intent to defraud his creditor, and committed to prison, presented his petition to be discharged from imprisonment upon making an assignment of all his property under the sixteenth section of the act. All the material facts will be found in the opinion denying the application.

DALY, F. J.—The petition of the applicant sets forth that, being a prisoner, confined in the city prison of this city, under a commitment granted by me in certain proceedings had before me on behalf of Wilson G. Hunt and others, under the provisions of the act to abolish imprisonment for debt, and to punish fraudulent debtors, and having given the bond specified in the fourth sub-division of the fourth section of that act, he asks for such relief as he believes himself entitled to, pursuant to the provisions of the said statute, having complied with the provisions of the same, adding the usual prayer for an assignment of his estate, and a discharge pursuant to the act; and his petition is accompanied with an account of his creditors and an inventory of his estate, as the same existed at the time of his imprisonment. This petition is defective in not setting forth sufficient to give an officer jurisdiction to hear the application and grant a discharge, unless it may be supposed that I can take judicial notice of the proceedings formerly had before me. It was held by the Court of Appeals, in *The People* v. *Bancker* (1 Selden, 107), that whether the application is made after a suit has been commenced against the debtor, in which, by the provisions of the act, he cannot be arrested or imprisoned, or is made in pursuance of the bond given to avoid commitment, or is made after the debtor has been committed, that in either and all of these cases it must appear that the debtor has been proceeded against for the collection of a debt or demand arising upon contract, for which he could not be arrested or imprisoned, according to the provisions of the act, and that the petition must show affirmatively the nature of the suit or judgment. In effect, that it must appear that the suit or judgment was one in which the debtor could not have been arrested or imprisoned under the act. All that appears in the petition here is, that Andriot was

committed by me to the city prison, in certain proceedings had before me, on behalf of Wilson G. Hunt and others, under the act to abolish imprisonment for debt; and that after he was committed he gave the bond, under the fourth sub-division of the fourth section, conditioned that he would apply for an assignment and discharge within thirty days. Whether a suit was commenced, or a judgment was obtained by Hunt and others, without which I could not have acquired jurisdiction to commit him to prison as a fraudulent debtor, is not stated. In *The People* v. *Bancker*, the fact that a suit had been commenced against the debtor by the prosecuting creditor, was set forth by the petition, but it was held to be insufficient, because it did not disclose the nature of the suit. Here there is no mention even of the commencement of a suit, or the obtaining of a judgment, to authorize the arrest and commitment; nothing but the general statement that certain proceedings were had under the act to abolish imprisonment for debt. Clearly, if this petition was before another officer than myself, he would be bound, under the authority cited, to dismiss it; and I do not deem it necessary to inquire how far I have the power to take notice of matters that have officially taken place before me, inasmuch as I shall be compelled to dismiss this application upon other grounds. It was further held, in the case cited, that the inventory to be annexed to the petition, must contain an account of the petition, with real and personal, and of all charges affecting the same, both as such estate existed at the time of his arrest, and as they exist at the time of preparing the petition. The inventory here is defective in this respect. It merely sets forth his estate and the charges existing upon it, at the time of his imprisonment. The imprisonment referred to in his petition is his imprisonment in the city prison, under the commitment I granted. This arrest was anterior to that period, and the inventory is, therefore, defective in not setting forth his estate and the charges upon it as it existed at time of his arrest, and as it existed when he prepared his petition. The former is not stated at all, and the latter is left to be inferred. It has been the practice of the judges of this court when proceedings of this kind have been instituted before them individually, and of other judges in this city, upon the authority of

In the matter of Andriot.

*Brodie* v. *Stevens* (2 Johns. 389), to allow the schedules to be amended, unless they were satisfied that the omission was unintentional or rose from a misconception of the requirements of the statute. But an amendment of the schedules here would not avail the petitioner, there being other objections to his right to be discharged. It is objected that he did not make the present application within thirty days. Within that time, to wit, òn the 27th of July, he made his application for a discharge, which was denied. When the present application was made, the thirty days had expired. In *People* v. *Aikin* (4 Hill, 606), the debtor, to avoid a commitment, offered to make an assignment of his property, and delivered to the officer an inventory and account, pursuant to section ten, sub-division three. His application was opposed by the creditor, and after hearing the proofs and allegations of the parties, the officer decided that the debtor's proceedings had not been just and fair, inasmuch as he had concealed, removed, and disposed of a portion of his property, with intent to defraud his creditors, and he refused to grant a discharge. He then made another application to a different officer, who dismissed it upon the ground that the matter had been heard and adjudicated upon, and the debtor applied to the Supreme Court for a mandamus, which was denied, that Court holding that the matter having once been decided against him, it was *res adjudicata;* and that he was estopped from trying it a second time as long as the first decision remained unreversed, his remedy being to review that decision, if it was erroneous, by *certiorari.* The ground upon which the judge of this court dismissed the application before him does not appear. The objections that are now made by the creditors were made then, and it seems he dismissed it, generally, without specifying any particular ground. If he denied the petitioner's application upon the merits, the case of the *People* v. *Aikin* is expressly in point, and if he denied it merely from defect of form, I am not prepared to say that the petitioner had a right to make another application after the thirty days had expired. It has been customary, as I have stated, where the prosecuting creditor or creditors appear in pursuance of the notice, to permit an amendment for defect of

form ; but if the application is dismissed, I very much doubt if the debtor can renew it after the thirty days. It is not necessary, however, that I should put my decision upon this ground, the creditors having taken another objection to the discharge, which I regard as conclusive. The sixteenth section of the act provides that the discharge shall not be granted, if the opposing creditors shall satisfy the officer that the debtor has assigned, removed, or disposed of his property with intent to defraud his creditors, and the opposing creditors have put in evidence here the proceedings in which I convicted the defendant of having fraudulently disposed of his property. It is insisted, however, that the fraudulent disposition contemplated by the statute, is a disposition of property by the debtor during the time that elapses between his conviction and his application for a discharge. That though convicted of having made a fraudulent disposition of his property, he is still entitled to the benefit of the act, unless it is shown that he has assigned, removed, or disposed of property, with intent to defraud, after his conviction. Such a construction was put upon the act of Judge Ulshoeffer, in the case of *Bragg* v. *Underhill*, but with every respect for the opinion of my late associate, I cannot agree with him. I do not so read the statute. It declares explicitly that the officer shall not make the order for the assignment, unless the opposing creditors shall fail to satisfy him that the proceedings on the part of the petitioner are not just and fair, or that he has not concealed, removed, or disposed of any of his property with intent to defraud his creditors; and in the affidavit which the debtor is bound to annex to his petition, he is required to swear that he has not, at any time nor in any manner, disposed of or made over any part of his property, with a view to the future benefit of himself or his family, or with an intent to injure or defraud any of his creditors. The part of the statute relied upon by the petitioner as warranting the construction he put upon it, is the general provision in section ten, declaring that a commitment shall not be granted if the debtor shall do any of the things prescribed. Among them, deliver to the officer an inventory of his estate, and an account of his creditors, and execute an assignment or give a bond with

In the matter of Andriot.

sureties, conditional that he will apply in thirty days for an assignment of his property and a discharge; and the provision in section twelve, authorizing him, after his commitment, to present a petition praying for an assignment of his property, and that he may have the benefit of the act. But these provisions must be taken in connection with the subsequent one in section sixteen, which, as already stated, declares that the discharge is not to be granted if the debtor has concealed, removed, or disposed of his property, with intent to defraud, and such a construction is to be given as will make them harmonious with each other. When the fraud imputed to the debtor has been substantiated, he may avoid a commitment by paying the debt, or by giving security that it will be paid within sixty days, or if unable or unwilling to do either, by assigning his property for the benefit of the prosecuting creditor or creditors (*Berthelon* v. *Betts*, 4 Hill, 577; *Spear* v. *Wardell*, 1 N. Y. 144), or by giving a bond that he will apply for such an assignment within thirty days; or, after commitment, he may petition that his property may be assigned, &c. But this provision must be understood as applying only to cases where there has been no fraudulent concealment, removal, or disposition of property by the debtor, as where he has been adjudged guilty of, or has been committed for, fraudulently contracting the debt, or of unjustly refusing to apply property to the payment of a judgment or decree, or of being about to remove his property beyond the jurisdiction of the court, or to dispose of it with intent to defraud his creditors. Where, however, he has been adjudged guilty of concealing it, or of removing or disposing of it with such an intent, he comes directly within the prohibition of section sixteen, and cannot obtain the benefit of the act. That this is the true intent of the statute, I have not the slightest doubt, and such was the opinion of Chief Justice Savage in *Townsend* v. *Morrell* (10 Wend. 582). After adverting to the right of the debtor to apply for a discharge, he says: "This mode of avoiding imprisonment can only be efficacious where no actual fraudulent disposition or concealment of the property has been made by the debtor, for the officer is not to grant a discharge unless he shall be satisfied that the proceedings on the part of the debtor have been just

and fair, and that he has not concealed, removed, or disposed of his property, with intent to defraud his creditors; or, rather the opposing creditor must have failed to prove these charges. This relief, however, may be applied where the debtor has been convicted only of the intention to commit a fraud, as under the first subdivision of the fourth section. The same remarks are applicable to the fourth subdivision of section ten, by which a bond is to be given, the condition of which must be that the debtor will in thirty days apply for his discharge, and prosecute his application diligently until he obtains it." *Clarke* v. *Wright* (10 Wend. 584) is still more in point, for it would seem from the abstract of the case, no opinion being given, that it must have been decided upon the ground that the debtor, having fraudulently disposed of his property, was precluded from the benefit of the act. He was arrested upon the charge of having property or rights in action which he fraudulently concealed, and of having assigned and disposed of his property with intent to defraud his creditors, and the judge having become satisfied that the charge was substantiated, the debtor, to avoid a committal, delivered an inventory of his estate, and an account of his creditors, and asked for an order directing an assignment, and for a discharge under the third subdivision, section ten. The judge was unable to determine what was the proper course to be pursued under the circumstance, and he made a provisional order for an assignment, which was executed, upon which the prosecuting creditor applied for a commitment, which the judge, though satisfied that the proceedings on the part of the debtor had not been just and fair, declined to grant. The order made by the judge is not set forth in the report of the case, and it does not appear in what respect it was provisional, in what contingency it was or was not to have effect. No authority exists for making any temporary order, for the debtor was entitled to have his property assigned, or he was not. It is possible, however, that the judge directed the assignment to be made, with the view of determining thereafter whether a debtor convicted of a fraudulent disposition of his property was entitled to a discharge under the act, or perhaps with an understanding between the parties, that the question should be sub-

mitted to the Supreme Court, and, if that court was of opinion that the debtor came within the provision of the act, that he would thereafter proceed to appoint assignees and grant the discharge, in pursuance of section seventeen. All that appears by the report is that the matter was brought before the Supreme Court, and that the prosecuting creditor applied for a mandamus to compel the judge to commit the defendant, and that his application was granted,—sufficient to show that in the judgment of that court it was the judge's duty to have refused the debtor's application for an assignment and a discharge, and to have committed him. I can regard the case in no other light than as an express determination of the point now before me. If the constructions contended for by the petitioner were put upon the act, it would be in the power of a fraudulent debtor to defeat the very purpose the Legislature had in view in enacting it, for as a coercive statute it would afford no remedy to the creditor where the debtor has disposed of his property fraudulently. The fraudulent disposition of property is made one of the cases in which a debtor may be proceeded against, and it is to be presumed that the statute was designed to have some effect in such a case. But if this construction is to be given to it, the strange absurdity would be presented of its being effective and operative in the other cases; but in this particular case, of its furnishing no remedy at all. The object of the Legislature in passing this act was to abolish imprisonment for debt in all cases founded upon contract, but at the same time to except from its operation a certain class of fraudulent debtors. It was designed as a remedial and humane statute, relieving from incarceration in prison the honest but unfortunate debtor who had no longer the means of satisfying his creditor. By the common law the creditor, after having first stripped the debtor of his property by a *fieri facias*, might, if the claim remained unsatisfied, throw him into prison, and keep him there for life, unless he found means to discharge the obligation. His body was held as a satisfaction of the debt, and though by the Lords' act, passed in the thirty-second year of the reign of George II., upon which our insolvent laws were founded, he might be relieved from imprisonment upon surrendering all his effects to the cred-

itor, unless the latter consented to pay two and sixpence a day for his maintenance, he was still subject, both in this State and in England, to be taken in execution and to remain in prison until he could give notice, present his petition, and obtain his discharge, under these remedial statutes. This system, which made no distinction between the honest and fraudulent debtor; that subjected to the rigors of imprisonment any man who was unable to pay a debt, though that inability may have resulted from causes which it was not in his power to control, which no sagacity could foresee, and no prudence avert, was a reproach to the law, and a violation of the plainest dictates of humanity and justice. It was the fruit of an age, the barbarous policy and spirit of which will be understood by a passage from an old case (*Many* v. *Scott*, 1 Mod. 132), where Justice Hyde says: "If a person be taken in execution and lie in prison for debt, he is not to be provided with meat, drink, or clothes, but he must live on his own, or on the charity of others; and if no man will relieve him, let him die in the name of God, says the law, and so say I." While it was thus the intention of the Legislature to sweep away a feature so disagreeable to the intelligence of the age, it was equally their intention to subject the fraudulent debtor to the rigor of imprisonment; and by the passage of the act, to furnish to the defrauded creditor additional and more summary means to coerce the payment of his claim (*Townsend* v. *Morrell*, 10 Wend. 582; *Spear* v. *Wardell*, 1 N. Y. 144). The statute was intended to be what its name imports, "An act to punish fraudulent debtors." And in addition to the remedy given to the creditor with the view of preventing such frauds, the fraudulent removal, concealment, or disposition of property, or the receiving of it with intent to prevent its being made liable for the payment of the debts of the debtor, is declared to be a misdemeanor, and punishable criminally as such (*Son* v. *People*, 12 Wend. 344; *Thomas* v. *People*, 19 Id. 480). Now if a debtor fraudulently dispose of the whole of his property, with a view of preventing his creditor getting it, what benefit does the creditor derive by having him arrested and procuring his conviction, if the debtor can avoid a commitment, or be discharged from one, by making an assignment. He has no longer

any thing to assign.  He is required by the statute to set forth, under oath, his estate as it existed at the time of his arrest, and as it exists at the time he applies for the assignment.  This he can readily do, having parted with all his property before he was arrested.  Of what utility is it that the statute should provide for his being arrested at all in such case.  The prosecuting creditor, it is true, gets an assignment of all his estate both in law and equity, in possession, reversion, or remainder (2 R. S. 79, § 25, 2 Ed.)  But of what benefit is that, if there has previously been a fraudulent disposition of all the property. If he has a judgment, he can levy at once upon the property, if he can find it in the hands of the fraudulent assignee or vendee; or if it consists of choses in action, not subject to levy upon execution, he may invoke at once the equitable aid of the Court to set aside the fraudulent sale or assignment; or if he has merely commenced a suit, there being no defense to the debt in such a case, he may obtain judgment, and put himself in a position to attack the fraudulent transfer about as soon, in the great majority of cases, as he can secure the conviction of the debtor, and compel him to an assignment.  His becoming then the assignee of the debtor's estate to the extent of his claim, places him practically in no better position to reach the property which has been fraudulently disposed of than he had as a judgment creditor.  At best it could but enable him to proceed somewhat earlier; but I am unwilling to suppose that the sole object of the statute was to confer upon him this little advantage.  It is also true that the debtor thus guilty of a fraudulent disposition of his effects, may be indicted for a misdemeanor, and punished criminally.  But this is a matter with which the creditor has nothing to do.  It is not intended for, nor does it afford, him any remedy for the recovery of his debt.  It is an offense against the public, the same as any other crime, and is punishable as such.  In the case of *Kershaw*, decided after the passage of the amendatory act of 1845 (2 R. S. 114, 3 Ed. §§ 36, 37), which allowed the defendant, after conviction, to put in special bail, Judge Ulshoeffer decided that that act removed all doubt as to the construction of the statute, and clearly contemplated that the disposition of property which precluded a

discharge was a disposition after conviction, and before the-
debtor presented his petition. But that act made no change in
the statute in this respect, but provided that a debtor adjudged
guilty of either of the frauds specified in the fourth section of
the original act should be entitled, in addition to the case pro-
vided for by the seventeenth section, to the discharge under
that section, upon his putting in special bail to the action,
whether a judgment or decree should have been rendered in
the action or not. The only effect of this provision was to en-
title the debtor to be discharged from the proceedings instituted
by the creditor, upon his putting in special bail, instead of his
making an assignment, or giving a bond that he would apply
for an assignment within thirty days. But at the same time
it provided, by section two, that though he may have put
in and forfeited special bail, he should still be liable to be im-
prisoned upon any execution to be issued against his body in
such suit, in the same manner as though the amendatory act
had not been passed. It is difficult to determine what was.
meant by the latter provision, as the debtor could not have
been imprisoned upon an execution, or upon a judgment
founded upon a contract, the statute of 1831 declaring that no
person should be arrested or imprisoned in such a case, unless
he had committed some one of the frauds specified in the
fourth section. His putting in special bail in such a case
would seem to give the creditor no remedy, if the debtor's body
could not be taken in execution. It may have been intended
that if he could have put in special bail, his body should not
be liable to be charged in execution, though the judgment or
decree may have been founded on a contract, and that he
should be left to obtain his release from imprisonment by peti-
tioning for a discharge, the same as any other debtor imprisoned
in civil cases. But whatever may have been the meaning or
intention of the act, the amendatory act of 1846, Laws of 1846,
255, limited its operation to cases where the debtor was con-
victed of fraudulently contracting the debt, or incurring the
obligation in respect to which the suit had been brought, the
amendatory act of 1846 declaring that the act of 1845 should
not apply to the case of a person arrested or imprisoned for

In the matter of Andriot.

either of the frauds specified in the first three subdivisions of the original act. It has, therefore, no application to the case of a conviction for fraudulent concealment, assignment, or disposition of property, in respect to which the original act remains unaltered. It may be asked if the debtor cannot obtain a discharge, how is he to get out of prison? The same question was put to the Court in the case before referred to of the *People* v. *Aikin*, 4 Hill, 606. That the debtor was convicted of having fraudulently concealed, removed, or disposed of a portion of his property. His discharge was denied for that reason, and the decision was held to estop him from making another application for a discharge. The Court was asked how he was to get out of prison, and they said that that was a question they were not to decide. The same answer may be returned here, and it was doubtless the fact that no authority existed for releasing a fraudulent debtor committed in a case like this, that led the Legislature, in the revision of the Code in 1851, to enact (§§ 302, 257), that in all cases of commitment under the act to abolish imprisonment for debt, the person committed may, in case of inability to perform the act required, or to endure the imprisonment, be discharged from imprisonment by the court or judge committing him, in the court in which the judgment was rendered, upon such terms as may be just. In conclusion, I shall hold that Andriot, having fraudulently disposed of his property, within the meaning and intent of the sixteenth section, is precluded from the benefit of the act, and his application will, therefore, be denied.