Matter of Brady.

# COURT OF APPEALS.

On an application by an imprisoned debtor for his discharge, under *title 1, chapter 5, article 6 of part 2 of the Revised Statutes,* the discharge will not be granted, where the debtor has been guilty of the acts which he is required to negative by the oath prescribed by the statute; and it is enough to show that the proceedings on the part of the prisoner are not *just and fair,* if the creditor establishes on the hearing that the debtor has disposed of, or made over, any part of his property with intent to injure or defraud any of his creditors, although such acts were committed before the commencement of the action in which he is imprisoned, provided they are shown, also, to be so far connected with the action as to be the grounds upon which the order for his imprisonment therein was based. (*Per* EARL, *J.;* FOLGER, RAPALLO *and* ANDREWS, *JJ., concurring.*)

The provisions of the act, which in effect forbid such discharge, if the debtor has fraudulently disposed of his property, or in case his *proceedings* have not been *just and fair,* contain no limitation as to *time,* and it is immaterial whether a fraud upon his creditors is perpetrated before his imprisonment in execution, or intermediate the arrest and examination. (*Per* EARL, *J.;* FOLGER, RAPALLO *and* ANDREWS, *JJ., concurring.*)

An appeal lies to the general term of the supreme court, from an order of the special term, discharging a petitioner from imprisonment on execution. It is a special proceeding, as defined by sections 1, 2 and 3 of the Code, but such order is not final and conclusive in the sense that it cannot be appealed from. (*Per* EARL, *J.;* FOLGER, RAPALLO *and* ANDREWS, *JJ., concurring ;* ALLEN *and* MILLER, *JJ., dissenting.*)

*May Term,* 1877.

THIS is an appeal by the petitioner, Walter Brady, from an order of the general term of the supreme court of the first department, reversing an order of the special term, entered

in a proceeding under title 1, chapter 5, article 6 of part 2 of the Revised Statutes, discharging the petitioner from imprisonment on execution, and denying the applicant's petition for a discharge.

The petitioner was arrested in the two actions brought by the opposing judgment creditors for disposing of his property with intent to defraud his creditors.

Motions were made in each of said actions to vacate said orders of arrest, and denied, and in one of them an appeal was taken from such order of denial to the general term of the supreme court, and the order so appealed from was affirmed (*Wheeler* agt. *Brady*, 2 *Hun*, 347).

Judgment was subsequently entered and execution duly issued against the petitioner's person, on which he gave bail for the limits, in each of said actions; subsequently the petitioner brought these proceedings pursuant to the above title of the Revised Statutes for his discharge.

On the return day, the petitioner was put upon the stand by the respondents and examined, and his testimony shows conclusively that after contracting the indebtedness upon which said judgments were recovered, he, being then insolvent, transferred to his unmarried daughter, who resided with and was supported by him, and to his attorney, all his remaining property without consideration (which constituted the grounds for obtaining and holding said orders of arrest), and that two days previous to such transfer, he executed a mortgage for $5,000 on a portion of his real estate for his own benefit, and without consideration, to a person with whom he had then arranged to go into partnership shortly after.

This was unknown to respondents until so disclosed on the examination, and therefore the orders of arrest were granted and sustained independently of this last fraudulent transfer.

It is admitted, by stipulation made in this proceeding, " that the said petitioner, Walter Brady, was arrested in each of the actions described in his examination herein on *ex parte* affidavits, *on the ground that he had disposed of his property*

*with intent to defraud his creditors*, and that motions were made in each case by him on counter affidavits to vacate the two orders of arrest, which were denied; and that the two judgments from imprisonment, under which the debtor, Walter Brady, has applied to be relieved, are the judgments entered in said two actions in which the orders of arrest were granted and held."

Mr. justice DONOHUE, at special term, held that the petitioner was entitled to his discharge, on the ground that the evidence did not show that he is " now concealing, or attempting to conceal, property," and therefore granted the order of discharge appealed from. The following is judge DONOHUE's opinion at special term :

DONOHUE, *J.* — After the most careful examination of the case, it does not appear to me that there is any evidence to show that the defendant has in his possession or under his control any property or rights, which he now secretes or has secreted. In contemplation of these proceedings, his assignment carries with it any right he may have to all his property. I fully agree with judge CLERKE, in "*Matter of Latorie*, the law did not intend a perpetual imprisonment." If it appeared that the defendant was now concealing or attempting to conceal property, the imprisonment might continue until he did justice; but it does not appear on this evidence that any further continuance of it can produce any result. I feel myself bound by the case referred to, and order the discharge asked.

On appeal to the general term the order of the special term was reversed and the following opinion rendered:

DAVIS, *P. J.* — The respondent was imprisoned on two executions issued upon judgments severally recovered by the appellants. He was arrested in each of the actions upon orders obtained upon affidavits alleging that he had disposed of his property with intent to defraud his creditors. Motions in each of the actions to vacate such orders of arrest, founded

upon affidavits, were made and denied, and an appeal was taken from the order of denial in one of such motions, which order was affirmed by the general term ( *Wheeler* agt. *Brady*, 2 *Hun*, 347). The application for discharge was made under title 1, chapter 5, article 6 of part 2 of the Revised Statutes (2 *Rev. Stat.*, *p.* 31 [*Edm. ed.*]). The fifth section of the statute under which the proceeding is presented, requires that an affidavit shall be made, indorsed on the petition and sworn to by the applicant, stating that his petition and the account of his estate, and of the charges thereon, are in all respects just and true, and that he has not, at any time or in any manner, disposed of or made over any part of his property with a view to the future benefit of himself or his family, or with an intent to injure or defraud any of his creditors. The eighth section of the same statute declares that, " unless the opposing creditors shall be able to satisfy the court that the proceedings on the part of the prisoner are not just and fair, the court shall order an assignment as aforesaid and grant a discharge as hereinafter directed." The court granted the order of discharge. The grounds upon which it was granted appear by the opinion of the learned judge.

This opinion shows that the order of the court below was granted because the opposing creditors failed to show that the petitioner was at *that* time concealing or attempting to conceal property, or had then in his possession or under his control any property or rights which he then secreted, or had secreted, in contemplation of these proceedings. We think this was altogether too narrow a construction of the statute under which the petition was presented. He was required by the statute to swear that he had not at any time, or in any manner, disposed of or made over any part of his property with a view to the future benefit of himself or his family, or with an intent to injure or defraud any of his creditors (*Sec. 5, ubi sup.*). We think if the opposing creditors succeeded in establishing that this part of the affidavit, indorsed upon

the petition, was not true, they thereby showed that the proceedings of the prisoner were not just within the meaning of the statute.

Such was the construction of the statute in *Gale* agt. *Clark*, by DALY, Ch. J., of the common pleas, in an opinion reported in the New York Weekly Digest (*vol.* 1, *No.* 10, *p.* 209), in which he held that, " by the act, the applicant is required to swear that he has not parted with or made over any part of his property with intent to defraud any of his creditors." And he also held that the act of mortgaging personal property to a brother of the petitioner, before the commencement of the action in which he was imprisoned, with intent to defraud creditors, was a proceeding not just and fair within the meaning of the statute, as construed by the court in the case of *Watson* (2 *E. D. Smith*, 429). It is not reasonable to suppose that the legislature would require an imprisoned debtor to take the oath above set forth and at the same time provide for his discharge, notwithstanding it should be shown by an opposing creditor that such oath was false, because it was not also shown that he had, at the time of the hearing, property which he then concealed, or because it was not shown that he had secreted his property with a view to the particular proceeding for his discharge. The intention was, we think, as indicated by the form of the oath, to prevent the discharge of a debtor who has been guilty of the acts which he is required to negative by the oath prescribed by the statute ; and that it is enough to show that the proceedings on the part of the prisoner are not " just and fair," if the creditor establishes on the hearing that the debtor has disposed of or made over any part of his property with intent to injure or defraud any of his creditors, although such acts were committed before the commencement of the action in which he is imprisoned, provided they are shown, also, to be so far connected with the action as to be the grounds upon which the order for his imprisonment therein was based.

This condition of things was shown by the appellants on the hearing of this case. They produced the affidavits upon which the order was made, and those made upon the hearing of the motion to discharge the orders, which showed the grounds upon which the order was made, to wit, the disposing of the property with intent to defraud creditors; and they proved by the petitioner's own examination that he had made the disposition alleged in those papers of his property, and showed other transactions relating thereto which we think the court below, if it had considered these acts as within the statute, would undoubtedly have held to have been fraudulent as to his creditors.

. The order of the court below was therefore erroneous and must be reversed, with costs of the appeal.

DANIELS, J., concurred.

From the order of the general term this appeal is now taken.

*Thomas M. North*, attorney, and *J. Langdon Ward*, of counsel, for appellants, argued the following points:

I. Judge DONOHUE's decision was . correct, and his order should have been affirmed, for the reasons given in his opinion. The application was under 2 Revised Statutes, chapter 5, article 6 (*not under the Stillwell act*). By section 6, the court, "if satisfied that the petition and account of the applicant are correct, and that his proceedings are just and fair, shall order an assignment to be made," &c. By section 8, unless the opposing creditor shall be able to satisfy the court that the proceedings on the part of the prisoner are not just and fair, the court shall order an assignment as aforesaid, and grant a discharge. The issue tried before judge DONOHUE was whether the applicant's petition and account was correct, and his proceedings just and fair. What proceedings? The word is again used in section 13 in unmistakable context: " the proceedings authorized by this article." Such is the natural, grammatical and logical meaning of the word in such

a connection Clearly it means the proceedings prescribed by the statute. "The proceedings on the part of the prisoner," his proceedings to obtain a discharge from imprisonment. Such is the only meaning consistent with the apparent plan and policy of the act. It is a remedial statute ; it recognizes that the object of imprisoning a debtor is to reach his property ; it enables a debtor to be discharged from imprisonment if he will justly and fairly substitute for his person the property which he had at the time of his arrest, except such as he may have justly and fairly used meanwhile. It is not a punitive statute to imprison forever a debtor whose conduct throughout life has not always been just and fair. In *People* agt. *White* (14 *How'. Pr. R.*, *at page* 501), judge E. D. Smith gives the correct interpretation of the statute : " The requirement that the proceedings must be just and fair * * * cannot relate to the general dealing and transactions of the applicant before his imprisonment, because, under the non-imprisonment act, and now under the Code, it is a ground of arrest and imprisonment that the defendant fraudulently contracted the debt in question, or has fraudulently concealed or disposed of his property. The very ground on which the original arrest and imprisonment was authorized, as in this case, where the debt was contracted in a fiduciary capacity, cannot present the ground on which the court may adjudge the proceedings of the imprisoned debtor not *just* and *fair*, and refuse his discharge." And see further able and complete exposition of the statute ( *pages* 501, 502). See, also, the manuscript opinion of judge Clerke, *In the Matter of La Torre.* The court of appeals, in *People* agt. *Bancker* (5 *N. Y.*, 121–124), considered the two inventories, one at the date of imprisonment, and one at the date of the petition, as required for the purpose of showing whether he had, *pending the proceedings*, made any improper disposition of his property, and thus testing the justness and fairness of his proceedings. The supreme court, at general term, fifth district, in *People* agt. *Brooks* (4 *How.*, *p.* 165), held that voluntary proceedings in bank-

Matter of Brady.

ruptcy by an imprisoned debtor, *pending* his imprisonment, whereby his property was vested in an assignee, was a fraud on this statute, and that his discharge should be refused on that ground. The superior court, in *Roswog* agt. *Seymour* (7 *Robt.*, 427), held that a voluntary petition in bankruptcy, whereby the debtor's property was disposed of *before* his arrest, but after his liability to arrest, did not bar his discharge.

This view of the statute is confirmed by the striking difference between its language and that of the Stilwell act (*chapter* 300, *Laws* of 1831), which, after providing the same machinery of petition, account and inventory, enacts, in section 16, " if at any hearing of such petition, the opposing creditor shall fail to satisfy said officer that the proceedings on the part of the petitioner are not just or fair, *or that he has converted, removed or disposed of any of his property, with intent to defraud his creditors*, such officer shall order an assignment," &c. If this court could amend the Revised Statutes, by adding to sections 6 and 8 the clause above italicized, the appellant's construction of the statute might be sound. But the legislature meant one thing by the requirement in both statutes that the petitioner's proceedings must be just and fair, and quite another thing by the addition in the later statute of the italicized clause, which manifestly was not included in the previous clause within the legislature's intention.

II. If the petitioner had, in fact, conveyed any property in fraud of his creditors before his imprisonment, that property, by virtue of Laws of 1858, chapter 314, passed to his assignee in these proceedings, as well as the property of which he remained in possession, and the objects and intent of the act are fully satisfied by the assignment ; it gives the creditors, in substitution and redemption of their debtor's person, every right of property which he had or ought to have had. Why should he be longer imprisoned ?

III. If the issue submitted to judge Donohue was as broad as the appellants' claim, extending to the justness and fair-

ness of the petitioner's conduct in all respects and at all times, the evidence would have justified a finding in favor of the respondent, and the general term should not have reversed that finding upon a different view of the evidence.

IV. If this court will examine the testimony, they will affirm the order of judge DONOHUE on the merits, whatever their interpretation of the clause above discussed. 1. There is no evidence, we suppose no claim, that the petition and account are not correct, or that the proceedings on the part of the prisoner, in the sense given those words in the *People* agt. *White* (*supra*), are not just and fair. 2. The conveyance to the wife in November, 1871, was before the petitioner's insolvency, before the appellant's claims existed, and when, so far as appears, he was free from unsecured indebtedness. There is no evidence here on which the court could hold that provision for his wife fraudulent. 3. The conveyance to Reed & Thompson, and of the lots on One Hundred and Twelfth street, seem to be, and we suppose are, unobjectionable. The mortgage to Brewster is not shown or suggested to have been in any respect improper. The mortgage to Todd was a fourth mortgage on a valueless equity of redemption. Whatever its object, it was not intended to defraud creditors, and did not, in fact, defraud them. 6. The conveyance to Brewster was also of a valueless equity of redemption, by which creditors have lost nothing. There was a good consideration, for which the conveyance, subject to two mortgages on a part, and four on the rest of the premises, was not likely to be excessive. It turned out to be not adequate. The only criticism justly to be made on this transaction is that the lawyer was pressing for his pay, and the client willing to give him a preference over other creditors. 7. The conveyance to the daughter was of land which he had offered to sell for $250, which he thought worth $600 or $700, though he had never been offered more than $500, which was subject to heavy arrears of taxes and assessments, in payment of a meritorious indebtedness to her for loans and

services. He had years before verbally sold and agreed to convey the land to her, and she had long been in possession of the premises, and collected its rents as owner. Pecuniary arrangements between members of a family are apt to be loose and informal, but there is no contradiction of the petitioner's testimony that he had borrowed as much as $600 from his daughter, which he owed her, with interest, and that she had performed services as housekeeper since her majority, for which he must have paid a stranger $500. It would be hard to make out a fraud on creditors in a conveyance of land which ultimately realized less than $1,000, in payment of such a debt. The court will be slow to doom an aged, broken man to perpetual imprisonment for mere inconsiderate looseness, and want of business method in dealing with his own daughter.

V. There was no error in the rulings in appellant's favor. The *ex parte* affidavits offered were not evidence on this trial. They were afterward admitted erroneously. The orders ruled out were afterward admitted erroneously.

VI. The order of arrest, and order denying motion to vacate, are not a bar to this proceeding. To hold them so would deprive this statute of the universal application intended by its policy, and expressed in its opening words, "*Every* person who shall be imprisoned" (*Sec.* 1; *People* agt. *White, supra*).

VII. Nor are they conclusive evidence. The issue here is not the same as on those motions, and the burden of proof which was then on Brady now rests on his creditors.

The order of the general term should be reversed, and the order of the court below affirmed, with costs.

*George W. Van Slyck* and *Freling H. Smith*, counsel for creditors, argued the following points :

· I. The order is not appealable. The general term, upon the evidence presented, refused to grant the discharge (*See general term opinion, Tracy* agt. *Altmeyer*, 46 *N. Y.*, 598). The order denying the discharge involved discretion. Sec-

tion 6 of the said statute provides "that the court shall order the applicant to be brought before it, \* \* \* and, *if satisfied* that the petition and account of the applicant are correct, and that his proceedings are just and fair, shall order an assignment," &c. This court, in construing the title of the Revised Statutes which relates to the discharge of persons committed for a contempt, held that the statute committed to the tribunals referred to a discretion not subject to review in this court, and that it was for the court below to decide as to what evidence it would require upon such an application (*The People* agt. *Delrecchio*, 18 *N. Y.*, 352). The appeal involves neither the question of want of power nor that of strict legal right (*Tilton* agt. *Beecher*, 59 *N. Y.*, 180).

II. The act forbids such discharge from imprisonment if the debtor has *at any time* fraudulently disposed of his property, or in case his proceedings have *at any time* not been just and fair. It contains no limitation *as to the time* within which such fraudulent disposition may have been made, or within which any of his proceedings may not have been just and fair. It provides (*sec.* 5): "At the time of presenting such petition, the following affidavit shall be indorsed thereon, and shall be sworn to by the applicant: I, the within-named petitioner, do swear \* \* \* that I have not, at any time or in any manner, disposed of or made over any part of my property with a view to the future benefit of myself or my family, or with an intent to injure or defraud any of my creditors." The above oath is necessary to, and constitutes a *part of the proceedings* of the petitioner for his discharge. The following section (*sec.* 6) of said act provides as follows: "Upon the presenting of such petition \* \* \* the court shall order the applicant to be brought before it, \* \* \* and if satisfied that the petition and account of the applicant are correct, *and that his proceedings are just and fair*, shall order an assignment," &c. Therefore, as the petitioner's oath constitutes a part of the proceedings, if the court becomes "*satisfied*" that his oath is false in

Matter of Brady.

any material respect, then the court *cannot* be "*satisfied*" that his *proceedings are just and fair*. The required oath states substantially but two things, viz.: First, that the petition and account are just and true. Second, that the petitioner has not, *at any time* or in any manner, disposed of or made over any part of his property with a view to the future benefit of himself or family, or with an intent to injure or defraud any of his creditors. The second branch of this oath is certainly quite as important as the first, and quite as essential to the interests of creditors, for, if a fraudulent disposition of his property is made by a debtor, of what use is the assignment provided for in the above act? The oath prescribes no qualification or limitation as to the time of the fraudulent disposition. If, therefore, the opposing creditors succeed in satisfying the court that the petitioner "has disposed of or made over a part of his property with a view to the future benefit of himself or family, or with an intent to injure or defraud any of his creditors," then the court must necessarily conclude that the most important and material part of the petitioner's oath is false, and consequently that his proceedings are not just and fair (*Gaul* agt. *Clark*, *N. Y. Weekly Digest, vol.* 1, *No.* 10, *p.* 209; *Matter of Paul Andrit,* 2 *Daly,* 28; *Matter of Watson,* 2 *E. D. Smith,* 429; *Maas* agt. *Latorre,* 6 *Abb. Pr.* [*N. S.*], 219; *Clark* agt. *Wright,* 10 *Wend.,* 584). If the rule here contended for be subject to any qualification by reason of its broadness, no such modification could equitably extend so far toward the opposite extreme as to effect the exclusion of this case from its operation, especially where the fraudulent dispositions of property by the debtor, and his unjust and unfair proceedings, are so intimately connected with the actions in which these judgments were obtained against him, that they constitute the grounds of his arrest in the said actions, and these grounds of his arrest and the grounds of the present opposition to his discharge are identical. The *People* agt. *White* (14 *How. Pr. Rep.,* 498), cited in the court below by

appellant's counsel, was an application for a discharge, which was refused, although the ground of arrest was the embezzlement of money received in a fiduciary capacity, it appearing that the applicant had not satisfactorily accounted to the court for the large amount of money he had received and embezzled. The court therein say that the requirement that the proceedings must be "just and fair," must obviously refer to something extrinsic to the formalities of the petition, account, schedule and affidavit, and that the affidavit is the key to the meaning of the words "just and fair." The policy and spirit of the insolvent laws are to discharge debtors from imprisonment on their giving up *honestly* all their property to their creditors ; but a debtor who, in contemplation of judgments about to be recovered against him, fraudulently assigns and disposes of his property, cannot be said to have honestly given up his property upon his application to be relieved from imprisonment under such judgments. If any other construction than that claimed by the respondents should prevail, what utility would there be in arresting a debtor? The mere fact of an assignment by the debtor, which may include all his right, title and interest in and to the property fraudulently disposed of, secures no more to the judgment creditor than he can get by a creditor's bill.

III. The petitioner fraudulently disposed of his property in order to defeat the respondents in the collection of their judgments. It appears from the testimony of the petitioner in these proceedings, that on the 8th day of April, 1873, he was, and had been for the preceding twenty years, a large real estate owner in the city of New York, owning at 'that time fourteen lots in said city, all of which he conveyed prior to the 28th day of January, 1874, and that he is now residing on Fifth avenue, in a house conveyed by him to his wife in 1871. On the 23d day of January, 1874, he still owned six lots, as follows: Two lots on the north-west corner of One Hundred and Thirty-first street and Fifth avenue, subject to mortgages amounting to $17,000. Three lots on

Matter of Brady.

the north-east corner of Third avenue and One Hundred and Sixth street, subject to mortgages amounting to $24,000. One gore lot on the south side of One Hundred and Thirteenth street, between Second and Third avenues, unincumbered, except by taxes and assessments. That on said 24th day of January, 1874, petitioner executed, and on the following day acknowledged, and on the twenty-sixth caused to be recorded, a mortgage on said Fifth avenue lots for $5,000, to one Reuben J. Todd, with whom petitioner had previously agreed to form a business copartnership, including one Wood, on the following first day of February, to carry on the real estate brokerage business. Petitioner made said mortgage, and recorded it in advance of his said copartnership, as the part of the capital he was to furnish said firm. Said business required no capital, excepting a trifling sum. His copartners agreed to, but in fact never furnished any capital. These lots were worth all the incumbrances, including this mortgage, and more. On the 26th day of January, 1874 (the same day on which above mortgage was recorded, and two days after it was acknowledged, Sunday intervening), petitioner conveyed to George H. Brewster, his attorney and counselor, the said Fifth avenue lots, and also the said Third avenue lots, subject to incumbrance. The property so conveyed was worth, in 1873, $65,000, and the petitioner had refused that sum for it, and that was the consideration expressed in the deed. The petitioner conveyed this property in payment for past services and for services *to be performed* in the future. The petitioner at one time swears that the conveyance to Brewster was to be absolute, and at another time that it was "*as collateral security* for such indebtedness as was then due, &c., and for such *other indebtedness as might thereafter become due*" from him to Brewster. He swears that at the time of this conveyance he considered the property worth nothing above the incumbrances; yet he thought Brewster might get something out of it, but cannot explain his meaning. He refused $30,000 for the Fifth

avenue lots a few months before — $7,000 more than the incumbrances, including his mortgage to his partner Todd. Brewster rendered no bill. The value of his services and the amount of his charges are unknown, and there is no limit to the future services, and their nature, even, is not fixed. On this same 26th day of January, 1874, the petitioner made a conveyance to his daughter of the gore lot on One Hundred and Thirteenth street, unincumbered. The deed was drawn by Brewster, and recorded with Brewster's deed. Consideration expressed, $1,500. The actual consideration is claimed to be the sum of $600, loaned to the petitioner by his daughter Georgiana (who was twenty-three years of age at the time of the conveyance) at intervals in small sums during the previous five or six years (he can't give dates or amounts), and for services of his daughter as housekeeper for himself, wife and family, valued at $400 or $500, and interest on the $600. He boarded and clothed his daughter during all this period; during the greater portion of it she was under twenty-one years of age. He can furnish no basis for determining the amount he borrowed of her, &c. There was no agreement for services; no price fixed; nothing said about a price. He can't tell when he agreed to convey the property to her, and although he says it was agreed that she should have this lot a long time before the conveyance, he swears he deeded it to her in payment for her services *rendered up to the very day* of the conveyance, and even a portion of the $600 was loaned, he says, only a few months before — within a year of the conveyance — and yet he swears, when examined by his own counsel, that he verbally conveyed the lot to his daughter *three or four* years before, she being then nineteen or twenty years old. At folio 91 he swears it was *one or two years before.* He had owned the lot twenty years; thinks its value was only $500 or $600, although immediately after the conveyance to his daughter he sold it for her for $1,400 cash. She obtained out of it, above all expenses, about $1,000, from which the petitioner immedi-

ately began to borrow.   He at first swears he did not borrow
to exceed twenty dollars, but on being confronted with his
daughter's affidavit — used by him on one of the motions to
vacate one of the orders of arrest, in which she states she
loaned him, after the conveyance, $300, he is unable to state
whether he had $300 or not, and can't remember one way
or the other, &c.   The petitioner, during these years in
which he was borrowing from his daughter, was giving her
money.   In his affidavits in the Wheeler case, the petitioner
stated the consideration was $600 borrowed money, and other
indebtedness, amounting in all to $1,300.   In the Vande-
venter case, he swore it was $600; and in these proceedings
he states it to be $600, and interest and services worth $400
or $500.   It will now appear why so many transactions
center about the 27th day of January, 1874.   On the follow-
ing day — January 28, 1874 — an inquest was taken in the
supreme court circuit, in the city of New York, in an action
against the petitioner, in which Brewster was his attorney;
and on the thirtieth a judgment therein was entered against
him for $13,482.51, so that a day or two before said inquest
the petitioner had not only mortgaged his property to his then
prospective partner for his now benefit, without consideration,
for $5,000, but had transferred all the remaining property he
possessed to his daughter and attorney, without consideration.

IV. The petitioner's conduct and motives must be tested
and judged by reference to the facts and circumstances as
they existed at the time of the transactions in question.   It
will not avail him to assert that he received no benefit from
the fraudulent $5,000 mortgage or the conveyances.   The
mortgage, when made, was confessedly good, and the daughter
received $1,000 net cash from the transfer to her.   It is
immaterial what the lots conveyed to the attorney afterward
brought, and particularly eighteen months later, at forced
sale, and in times of great financial depression.   Such sale is
no criterion of value (*Schenck* agt. *Andrews* 57 *N. Y.*, 133,
150).

V. The order appealed from should · be affirmed, or the appeal dismissed, with costs to each of the opposing creditors.

EARL, *J.* — The debtor was arrested in two actions upon orders of arrests, issued because he had disposed of his property with intent to defraud his creditors. Judgments having been obtained in the actions, he was arrested and imprisoned by virtue of executions issued thereon. He applied for his discharge as an imprisoned debtor, under part 2, chapter. 5, title 1, article 6 of the Revised Statutes. By article 6, an imprisoned debtor, desiring a discharge from imprisonment, is required to present a petition to the court praying for his discharge, setting forth the matters specified in section 4. He must swear to the following affidavit, as prescribed in section 5, to be indorsed upon his petition : " I, the within named petitioner, do swear that the within petition and account of my estate, and of the charges thereon, are in all respects just and true ; and that I have not, at any time, or in any manner, disposed of or made over any part of my property, with a view to the future benefit of myself or my family, or with an intent to injure or defraud any of my creditors." If, upon the hearing, the court shall be satisfied that the petition and account of the applicant are correct, and that his proceedings are just and fair, the discharge must be granted.

The affidavit is part of the proceedings, and that cannot be just and fair unless it is true. It is important, therefore, to ascertain the scope and meaning of the affidavit.

It is not complained in this case that the petition and account of his estate, and of the charges thereon, were not just and true. It was not shown that he had disposed of any of his property with a view to the future benefit of himself or his family. The future benefit here mentioned was a benefit to be received and enjoyed after the date of the petition. An imprisoned debtor could not be discharged who had thus secured for himself the benefit of property which ought to have been, and to be, appropriated to the payment of

Matter of Brady.

his debts.   But the claim is that he had disposed of some of his property with intent to defraud his creditors, and the facts sustain this claim.   What creditors are here meant ? Plainly creditors who could be defrauded by the disposition complained of.   There must have been an intent to defraud existing creditors, of whom the creditor contesting the discharge would be one.   A fraud committed years before, upon a class of creditors whose claims had been paid, or had ceased to exist, would not prevent a discharge, and a creditor could not contest the discharge on the ground of a fraudulent disposition of property, who was in no way injured or defrauded. The fraudulent disposition made here was with intent to defraud the very creditors who oppose the discharge.

That this construction of the statute may lead, in some cases, to unlimited imprisonment, is possible.   But we have nothing to do but to construe the law and enforce it as it is. We have no power to abrogate it or soften its hard features. At the time of the adoption of this statute imprisonment for debt was authorized in all cases.   The honest and dishonest debtors shared the same hard lot.   The sole object of this statute was the discharge of honest debtors, who made an honest and full surrender of all their property for their creditors. It was not intended to benefit debtors who had disposed of their property for the purpose of defrauding the very creditors at whose suit they were imprisoned.   Even under the non-imprisonment act, passed subsequently, which, in most cases, abolished imprisonment for debt (*chap.* 300 *of the Laws of* 1831), such a debtor could not be discharged from imprisonment, and neither could he be discharged under article 3 of the same title and chapter above mentioned, commonly known as the two-thirds act, nor under articles 4 and 5, in reference to " proceedings by creditors to compel assignments by debtors imprisoned on execution in civil causes," and in reference to " voluntary assignments by an insolvent, for the purpose of exonerating his person from imprisonment." The policy of the law is thus plainly indicated.   Without

further discussion here, it is sufficient to express concurrence in the satisfactory opinion at general term.

But it has been suggested that the appeal to the general term was not authorized. We are of opinion that it was. This was a special proceeding, as defined by the Code (*Secs.* 1, 2 *and* 3 *of the Code*). By chapter 270, of the Laws of 1854, an appeal to the general term of the supreme court is authorized from an order or final determination of the special term, in any special proceeding. The order of the special term in this proceeding was, therefore, appealable, unless the statute regulating the proceeding makes it final. Section 6 of article 6 provides that the court " shall proceed in a summary way to hear and determine the proofs and allegations, and may examine the applicant or his wife, or any other person, on oath, and if satisfied that the petition and account of the applicant are correct, and that his proceedings are just and fair, shall order an assignment to be made of all his property," &c.

There is no provision that the order shall be final or conclusive, but simply one that the order shall not be made until the court shall be satisfied. A court must always be satisfied of the existence of certain facts, as the basis of its action, before it can make an order, and yet it has never been held, in any reported case, that such language used in a statute evinces a legislative intention that an order made shall be final and conclusive in the sense that it cannot be appealed from.

The law of 1813 (2 *R. L.*, 408) regulating the opening and laying out of streets in the city of New York, provides for the appointment of commissioners of estimate and assessment, and that their report shall be confirmed by the supreme court, and that such report, when so confirmed, shall be " final and conclusive." It has been held that no appeal will lie to the court of appeals, from such an order of confirmation made by the supreme court; that the words " final and conclusive " were used to forbid an appeal (*Matter of Commissioners of Central Park*, 50 *N. Y.*, 493; *Matter of Canal*

Matter of Brady.

*and Walker streets*, 12 *id.*, 406). The same words were held to prevent an appeal to the court of appeals from an order of the supreme court, made at a general term, confirming the report of commissioners to appraise the compensation to be made for lands proposed to be taken under the general railroad act (*In the Matter of the N. Y. C. R. R. Co.* agt. *Marvin*, 11 *N. Y.*, 276). The right to review the decision of a single judge sitting at special term in a matter affecting substantial rights being general and fundamental, it must be deemed to exist unless the intent to destroy it is expressed with great clearness. It cannot be said that such an intent is expressed in the statute under consideration.

The order of the general term must be affirmed, but without costs of appeal to this court to either party.

FOLGER, RAPALLO and ANDREWS, JJ., concur. CHURCH, Ch. J., voted for reversal of general term and affirmance on merits. ALLEN and MILLER, JJ., voted for reversal of general term and affirmance of special term on the ground that no appeal lies from the special to the general term.