## N. Y. COMMON PLEAS.

Matter of application of ANDREW L. ROBERTS for discharge from imprisonment under execution at the suit of THE NEW YORK GUARANTY AND INDEMNITY COMPANY.

*Discharge from imprisonment — Meaning of "just and fair" — When discharge will be denied — 2 Revised Statutes, chapter 5, article 6 — res adjudicata.*

Under the provisions of the act providing for the discharge of imprisoned debtors where the proceedings are had under article 6, chapter 5, part 2, title 1 of the Revised Statutes:

*Held,* that the proceedings of the debtor are not "just and fair" where he has removed his own property with intent to defraud his own creditors or to benefit himself or his own family, although neither he nor his family have been benefited by the act — his creditors nevertheless having been deprived of the property.

*Held,* also, that where the debtor has procured from the creditor, at whose suit he is imprisoned, property by fraud, even if he has spent the proceeds in any way that would be unobjectionable if they were his own, and if by loss or accident he is deprived of them, his proceedings are not "just and fair."

*Held,* further, that where the debtor has combined or united with others to fraudulently obtain the property of the creditor at whose suit he is imprisoned, even if such others got the proceeds of the fraud and he got none, his proceedings are not "just and fair" within the meaning of the statute.

But, on the other hand, if the prisoner, while legally liable for the debt or the damage growing out of the fraud or tort, was yet innocent of a guilty intent, and either received none of its fruits, or properly accounts for what he got, the tort in question would be no bar to his discharge.

In this case if the judgment against the prisoner is conclusive that he had knowledge of the fraud by which the money was procured from the plaintiff, it would be indisputable evidence that the debtor's proceedings have not been "just and fair," and would be fatal to this application for his discharge. Whether the judgment is conclusive or not as to that fact depends on whether such a finding was indispensable to plaintiff's recovery.

If the judgment does not necessarily involve a finding that he had a fraudulent intent or guilty knowledge, the question is an open one and

may be tried in this proceeding ; if otherwise, then having been once litigated and determined between the plaintiff and himself, it cannot be retried, but he is bound by it no matter how onerous the consequences may be.

An adjudication in proceedings under the fifth article of chapter 5, part 2, title 1 of the Revised Statutes, is conclusive upon any question that is determined, which subsequently arises under the sixth article of the same chapter.

The principle of the rule as to *res adjudicata* (except in cases of mere motions incidental to an action) has no reference to the form or the object of the litigation in which the particular fact is determined which is thenceforth to be deemed established as between the parties to the dispute. The form or object of the prior litigation does not alter the conclusive effect of the judgment or decision.

*Special Term, June,* 1878.

J. F. DALY, *J.*— These proceedings are had under article 6, chapter 5, part 2, title 1 of the Revised Statutes. The execution under which defendant is imprisoned was issued December 15, 1877, upon a judgment recovered January 6, 1877, for $91,015.35, in the superior court of the city of New York, in an action for money had and received wherein the New York Guaranty and Indemnity Company were plaintiffs and Andrew L. Roberts, Lydia J. Roberts, Valentine Gleason, Amelia A. Gleason and Horace S. Corp were defendants. The moneys so had and received from the plaintiff were obtained upon the pretended security of forged bonds of the Buffalo, New York and Erie Railroad Company in June, July and August, 1873, which it was alleged were knowingly uttered for the purpose. An order of arrest in the action for the fraud in contracting the debt was issued against Roberts holding him to bail in $85,000, and has never been vacated.

Objection to the discharge of Roberts from imprisonment is made (among other grounds) because the judgment and order of arrest are, it is argued, conclusive evidence against him that "his proceedings are not just and fair" within the meaning of the sixth and eighth sections of the statute under which he applied for his discharge. As the determination of

this question against the prisoner would render further effort on his part to obtain a discharge ineffectual unless the decisions were reversed, I have deemed it proper to examine the point preliminarily.

It is urged by the plaintiff that the statute, when it requires the court to determine whether the prisoner's proceedings are just and fair and to grant a discharge or withhold it as that question is decided in his favor or not, does not refer merely to the proceedings in court under the statute, the correctness of his petition, schedule and account and the truth of his oath "that he has not at any time or in any manner disposed of or made over any part of his property with a view to the future benefit of himself or his family, or with an intent to injure or defraud any of his creditors" (*section* 5 *of article* 6), but that the terms "just and fair" involve a more extended inquiry, it being, as it is urged, repugnant to a sense of justice to adjudge the prisoner's proceedings just and fair when he has been already adjudged participant in a fraud by which a vast sum was obtained from the plaintiffs on forged bonds and for which fraud he is now imprisoned. On the other hand it is argued that while, in the broad sense of the terms, no man's proceedings, generally, can be just and fair if he had been convicted of fraud, this might be equally said in every case of tort, and the judgment in every case would be a bar to a discharge from imprisonment upon execution under it, a consequence evidently not contemplated by the statute; that if a prisoner be held for a judgment obtained against him for his fraud, it is enough to inquire what has become of the money or property fraudulently obtained, and that the utmost severity in such a case requires only that he be imprisoned until he has made good or restored what he got; that justice equally requires that the judgment should be no bar to his discharge if it appear that he never benefited by the fraud for which it was obtained; that the question whether any of the spoil fell to him, if not necessarily involved and decided in the judgment, may be inquired into in these proceedings; and

that even if the evidence disclosed that he shared in the fruits of the fraud he can only be required to account for the disposition of them.

In the case of *Watson* (2 *E. D. S.*, 429) it was held that the prisoner's proceedings were not just and fair, because he had removed his property from the state and disposed of it with intent to defraud his creditors. Watson and his brother were copartners, and becoming hopelessly insolvent fled to California with $8,500, which they spent, and were unable to account for satisfactorily. The decision in that case established: 1. That in the investigation as to whether the debtor's proceedings are just and fair, the court is not limited to any particular time or transaction; and 2, that a removal or disposition of the debtor's property, with intent to defraud any of his creditors, is a bar to his discharge, no matter in what way he has spent the proceeds, or, even if he has lost them or the property by unfortunate speculation. It was said in that case by chief justice DALY, that the statute intends to distinguish between the unfortunate and the fraudulent debtor, and that the former should have the benefit of the act and the latter should not, and if debtors who have fraudulently disposed of their property have nothing wherewith to satisfy their creditors, they must seek relief from the legislature and not from the court. It was said by judge WOODRUFF, in the same case, that where the absconding debtor wastes the money he has taken, in profuse expenses, gambling or adventures of any kind, including a large sum employed in litigation to prevent his creditors reaching him, he is not entitled to a discharge; that such a man is not the object of that protection and relief the statute has provided for an unfortunate but honest debtor; that the case would be the same if the money fraudulently removed had been used in living or lost by unforeseen or inevitable calamity, or even used by the debtor in an effort to make money in California to pay his creditors, for the removal of the money or property was yet fraudulent as to them.

The rule governing the question as to what proceedings of the debtor are just and fair, is certainly severe as the above citations show. It goes the length of declaring that if the debtor, with intent to deprive his creditors of the benefit of his property, places it out of their reach and then loses it by misfortune, or the chances of trade, or spends it in providing necessaries for his family, he is barred of his discharge and may be perpetually imprisoned. The terms of the debtor's oath to his petition (above cited) justify this decision that the offense lies in putting the property out of his creditors' reach, not in the subsequent use or disposition of it.

If such is the little favor shown the debtor who has disposed of *his own* property in order to defraud his creditors, what is to be said of the debtor who has, by fraud, taken or helped to take the property of his creditor? There is an immeasurable difference in the degrees of offense in the two cases. Is the creditor, whose injury is that he has been deprived of his resort to the debtor's effects for payment, to keep the latter in prison indefinitely, while the creditor who has been robbed outright must see the prisoner walk forth with a certificate that his proceedings have been " just and fair?" To answer affirmatively is to convict the law of injustice to both creditors and debtors. It will not do to say that if the robber got any thing by his crime he will be imprisoned till he restore it; it is not the question of benefit yielded to the prisoner by the fraud which is to be considered, but of damage to the creditor. Is the accomplice in a fraud to say : It is true I helped in the scheme to get the plaintiff's money, but I received no part of it? Is this an answer which the trusted clerk or cashier or deposit- ary would be allowed to make if he held the door open while others plundered? The test of the offense is the intent of the debtor, the taking for the purpose of depriving the credi- tor of the property, and I can only see a graver offense and greater bar to his discharge from imprisonment when the property taken belonged to the creditor instead of to the debtor ; and it seems just to hold, the proceedings of the

debtor not just and fair not only in the case (1) of the removal of his own property with intent to defraud his creditors or to benefit himself or his family, although neither he nor his family have been benefited by the act — the creditors nevertheless having been deprived of the property; but also in cases (2) where the debtor has procured from the creditor at whose suit he is imprisoned property, by fraud, even if he has spent the proceeds in a way that would be unobjectionable if they were his own, and if by loss or accident he is deprived of them; and in cases (3) where the debtor has combined or united with others to fraudulently obtain the property of the creditor at whose suit he is imprisoned even if such others got the proceeds of the fraud and he got none. But, on the other hand, if the prisoner, while legally liable for the debt or the damage growing out of the fraud or tort, was yet innocent of a guilty intent and either received none of its fruits or properly accounts for what he got, the tort in question would be no bar to his discharge. Such might be the position of a person sued for conversion who, while actually guilty of disposing of the property of another, may yet be ignorant of the rights he is invading ; or of a person sued for obtaining, in concert with others, money by false pretenses, may be liable for the debt, but as to the crime, was an ignorant cat's-paw used by the real conspirators.

In the case at bar, if the judgment against the prisoner Roberts is conclusive that he had knowledge of the fraud by which the money was procured from the plaintiff, it would be indisputable evidence that the debtor's proceedings have not been just and fair, and would be fatal to this application for his discharge. Whether the judgment is conclusive or not as to that fact, depends on whether such a finding was indispensable to plaintiff's recovery, and this must be ascertained from the pleadings. If the judgment does not necessarily involve a finding that he had a fraudulent intent or guilty knowledge, the question is an open one and may be tried in this proceeding ; if otherwise, then, having been once litigated and determ-

ined between the plaintiff and himself, it cannot be retried, but he is bound by it no matter how onerous the consequences may be.

A further and most serious objection is made to the discharge of the prisoner upon this petition. It appears from the record that before judgment and execution in this action, and while defendant was imprisoned upon *mesne* process, he applied to one of the judges of this court, under the fifth article of chapter 5, part 2, title 1 of the Revised Statutes, in the usual form, praying that his estate might be assigned for the benefit of his creditors, and that his person might thereafter be exempted from arrest or imprisonment by reason of any debts arising upon contracts previously made, and that he be discharged from imprisonment. That application was opposed by the plaintiff herein, and other creditors of Roberts, and was denied upon the ground that the prisoner had made conveyances of his property with intent to defraud his creditors (*Opinion of judge* VAN HOESEN, *June,* 1876, *special term*). The conveyances thus decided to be fraudulent, are the same which are attacked as fraudulent in this proceeding, and which the debtor claims now, as he claimed in the former proceeding, to be an honest disposition of his property. The plaintiff contends that the decision in the former proceeding determines one of the controlling questions arising on the present application, viz. : Whether the petitioner had, at any time or in any manner, disposed of or made over any part of his property, with an intent to defraud his creditors ; that it has been adjudged that the petitioner has disposed of the property now under consideration with that intent, and that such adjudication is conclusive as between him and any creditor who opposed the discharge asked for in the former proceeding.

The question whether the petitioner has, at any time or in any manner, disposed of any of his property, with intent, to defraud his creditors is vital in the proceeding at bar under the sixth article of the chapter cited above. This was the

very point of the decision *In the Matter of Watson* (2 *E. D. S.*, 429), based upon the oath which the petitioner is required by the fifth section of that article to make, and it was decided that if it should appear that the petitioner had made any such disposition of his property his application should be denied. The imprisoned debtor who applies under the fifth article of the chapter for exemption from imprisonment is required to make substantially the same oath (*sec.* 2, *art.* 5, *chap.* 5, 2 *R. S.*), and if that oath be false his application must be denied as the application of the petitioner, Roberts, under that article of the Revised Statutes, was denied by judge VAN HOESEN.

As the conveyances adjudged fraudulent in the former proceeding are the same which the petitioner now alleges to be *bona fide* and the creditors again attack, it would be in principle a violation of a well-settled rule to hold that the former decision is of no affect, and to permit a question once litigated and determined to be tried over between the same parties in a different proceeding. The principle of the rule as to *res adjudicata* (except in cases of mere motions incidental to an action) has no reference to the form or the object of the litigation in which the particular fact is determined, which is thenceforth to be deemed established as between the parties to the dispute. It does not affect the operation of the rule as now invoked that the fact that the petitioner has made a fraudulent disposition of his property was adjudicated in a proceeding to obtain a discharge from imprisonment on *mesne* process under the fifth article to which proceeding all his creditors were parties, while this proceeding is designed to effect his discharge from imprisonment on final process under the sixth article, and the execution plaintiff is alone a party to it. The creditors oppose, under the fifth article, severally, each for himself in his own right, and each is entitled to the benefit of the results of the litigation whether other creditors share in them or not. In both proceedings the petitioner is bound to satisfy the court that he has made no disposition of

his estate with intent to defraud his creditors; that is the principal issue in both proceedings, the issue has once been fully and fairly tried and determined against the petitioner; but that adjudication goes for naught and the litigation which was terminated by it is useless, if the same or any judge may re-examine, in another proceeding, the same question. The most important decisions in this state as to *res adjudicata* illustrate the principle that the form or object of the prior litigation does not alter the conclusive effect of the judgment or decision; thus judgment by a justice in summary proceedings is conclusive in an action for rent of the premises, where the question as to letting, hiring, term, rent and amount in arrears is identical in the proceeding as well as in the action (*Brown* agt. *The Mayor*, 66 *N. Y.*, 391, *and many cases cited; Powers* agt. *Witty*, 43 *How.*, 352; *Yonkers and N. Y. F. I. Co.* agt. *Bishop*, 1 *Daly*, 449). There the object of the proceeding and the object of the action are wholly distinct, and the tribunal, practice and form of procedure are different; but the fact litigated is identical in both, indispensable in both, and the determination in the one first tried conclusive.

Such should be and is, in my opinion, the effect of adjudications upon material issues in these and similar proceedings (*Matter of Rosenberg*, 10 *Abb.* [*N. S.*], 450; *Matter of Thomas, id.*, 114; *Matter of Roberts*, 10 *Hun*, 254). The reversal by the court of appeals does not affect the point decided. If, therefore, the proceedings heretofore taken by the petitioner to obtain exemption of his person from imprisonment were regular and the judge had jurisdiction, the adjudication in them is, until reversed or vacated, conclusive upon the petitioner, and, unless objection to the regularity of the proceedings can be urged, the plaintiff is entitled to an order denying the petition now presented.