## SUPREME COURT.

In the Matter of EUGENE FINCK an imprisoned debtor.

*Discharge of imprisoned debtor — when it will be denied.*

Where, upon the examination of the petitioner, an imprisoned debtor, in the proceedings for his discharge from imprisonment, it appears that his proceedings have not been "*just and fair*" towards a creditor under whose judgment he is imprisoned:

*Held,* that the petition should be denied.

*Proceedings* which are not "just and fair," within the meaning of the statute, explained.

*Special Term, February,* 1880.

*Mr. Sullivan,* for plaintiff.

*Mr. Hubbard,* opposed.

VAN VORST, *J.* — The judgment, upon which the execution was issued under which the defendant is imprisoned, does not materially involve the petitioner in any moral guilt or establish that his proceedings have not been just and fair. It is true that the complaint in the action charged the defendant with having wrongfully converted the plaintiff's bonds, and with fraud and deceit in respect thereto ; yet, in the end, the learned judge before whom the trial was had, held that the defendant was liable as a partner with Bushnell, who had tortiously taken the bonds, and that the position of Bushnell was the position of the defendant, the present petitioner, and that he was answerable for the wrong of which his partner had been guilty.

The judge, while directing a verdict for the plaintiff, stated that it was not necessary to intimate any opinion as to whether or not the defendant was cognizant of the acts of Bushnell, or had any knowledge that Bushnell had tortiously taken the

bonds.   But the evidence given upon the trial has been sub-
mitted to me with the view of showing that it involves the
petitioner personally in Bushnell's guilt, and that for such
reason his proceedings are neither just nor fair.   I have care-
fully read this evidence and the entire proceedings of the trial.
The defendant, on the trial, denied any knowledge at the time
of the transactions of the tortious act of Bushnell or that he
knew that the bonds in question used by Bushnell were the
property of the plaintiff ; and while with respect to that por-
tion of the inquiry I should hesitate to say that the facts and
circumstances disclosed on the trial make out such a clear case
against the prisoner as to deprive him of the benefit of the
statute under which his present proceedings have been insti-
tuted, yet that evidence and the petitioner's subsequent examin-
ation disclose facts, the particulars of which will be presently
stated, which constitute a bar to this application.

On the 28th of April 1878, the petitioner, upon the order
and direction of Bushnell, received from Mr. Des Marets, the
broker with whom the bonds had been deposited by Bushnell
to be held as collateral security for certain stock transactions
and for the purposes of raising money to be used in stock
operations, the sum of $6,818.40.

That amount he claimed as his proportion of certain profits
which he stated had been realized in the purchase and sale of
stocks which he had made by the authority of Bushnell.
These profits, if any, were the fruits of speculations based
upon the bonds as security, and the moneys paid to petitioner
were in fact realized from them.

These moneys in law and equity belonged to Mr. Butler,
the owner of the bonds.

If these moneys were received by the petitioner in good
faith and in ignorance of Mr. Butler's rights, he would be
guiltless of moral wrong whatever legal liability he incurred.
But within a month thereafter Bushnell absconded and his
guilt was publicly known.

He wrote a letter, dated the twenty-eighth May, acknowl-

edging his own guilt, but declaring the innocence of his broker and the petitioner.

From the time Bushnell's flight was known petitioner is chargeable with knowledge of his guilt. It was clearly his duty, so soon as he was advised of this fact, to make what reparation he could to repair the loss of Mr. Butler, occasioned, in part at least, by his action in prolonging and directing the stock transactions which absorbed the bonds in question. He made no movement in that direction.

On the twenty-eighth June his attention was directly called to this subject by Mr. Butler, who asserted a claim to these moneys as arising from his securities, of which he had been despoiled by Bushnell, his former clerk.

The petitioner himself claimed to be entitled to these moneys, and insisted that he should not be questioned about them, and stated that he had used and appropriated them as he pleased. Upon his examination in this proceeding the petitioner stated that he had spent the money. Some $3,500 he lost in stock speculations in "bucket shops," so called; the residue he has expended upon himself and family.

The examination indicates that these moneys were expended after the petitioner was advised of Bushnell's guilt, and some considerable portion of it after his interview with Mr. Butler on the twenty-eighth of June.

He could not pursue such course and still claim to be guiltless. He could not use these moneys, with knowledge of Bushnell's crime, and be clear of responsibility. Such use by him constitutes an adoption of the wrong and characterized his proceeding as unjust and unfair, and deprives him of the right to be released from imprisonment under the statute in question (*See article* 6, *title* 1, *chapter* 5, *part* 2, *of the Revised Statutes, sections* 1–17).

Judge J. F. DALY has, in a clear and satisfactory opinion, rendered *In the matter of the application of Andrew S. Roberts*, in the court of common pleas (*ante*, 136), discussed the question, the substance of which has been above consid-

ered, and has defined the term "just and fair," as used in the statute, and has determined to what acts and proceedings of the petitioner they are applicable.

The principles of that decision, which I approve, are fatal to this application, and the plaintiff in the judgment is entitled to an order denying the petition now presented.