ered, and has defined the term "just and fair," as used in the statute, and has determined to what acts and proceedings of the petitioner they are applicable.

The principles of that decision, which I approve, are fatal to this application, and the plaintiff in the judgment is entitled to an order denying the petition now presented.

# N. Y. COMMON PLEAS.

## In the Matter of FOWLER, an imprisoned debtor.

*Imprisoned debtor — what must be shown to prevent discharge — Meaning of "just and fair" — When entitled to discharge — 2 Revised Statutes, chapter 5, title 1, article 6.*

On an application to discharge a person from imprisonment in custody upon final process, what is required is that the proceedings of the debtor have been "just and fair" in respect to the matters that he is required to swear to in the affidavit upon presenting his petition. They relate to the inquiry whether he has made any such disposition of his property, as in the affidavit he is obliged to swear that he has not; or, in other words, whether the judge is satisfied that the statement made in his affidavit is true, in respect to which the fullest inquiry may be made by the oral examination of the prisoner, under oath, as well as the examination of his wife, or of any witnesses which the creditor has to offer.

There is nothing in the provision of the statute which would authorize holding that a debtor cannot be discharged because he made a false or fraudulent representation as to the solvency of a person to whom credit was given by the person who has recovered a judgment for damages against the prisoner, for the injury thus sustained.

Nor is the fact that he applied for his discharge as a bankrupt any such disposition of the property as is contemplated by the act; for whatever property he possesses, under such a proceeding, goes to his creditors. (*This would seem to be adverse to Matter of Roberts, ante, 136, and Matter of Finck, ante, 145.*)

*General Term, April, 1880.*

*William C. Holbrook*, for appellant.

*George W. Van Slyck*, for creditors.

DALY, *Ch. J.* — I fully concur in the conclusions arrived at by judge VAN HOESEN. Before the passage, in 1831, of the act to abolish imprisonment for debt, no distinction was made between the fraudulent and the honest but unfortunate debtor; but both were alike subject to arrest and imprisonment for the non-payment of their debts. In the language of chief justice SAVAGE, in *Townsend* agt. *Morrell* (10 *Wend.*, 581), "previous to the passage of that act, all debtors who had been held to bail must, by the theory of our laws, have been stripped of their property by a writ of *fieri facias* before they could be imprisoned, and they were then to be imprisoned, not because they would not pay, but because they could not — a state of things exhibiting in the most glaring point of view the inhumanity as well as the impolicy of imprisoning an honest debtor."

The act of 1831, therefore, commonly called the Stilwell act, forbids the arrest or imprisonment of any person upon civil process in any suit or proceeding instituted for the recovery of money founded upon contract, or for damages for the non-performance of one, except in certain cases — such as the contracting of a debt fraudulently, or the removal or disposition of property with intent to defraud creditors — and provided for a warrant in such exceptional cases; and for a course of procedure by which the property of the fraudulent debtor, if he had any, could be secured and applied to the payment of the judgment, if one existed or should be recovered; or if he had no property, for his discharge as an insolvent debtor, under what was known as the Fourteen Day act, which is now the sixth section, first article, chapter 5 of the second part of the Revised Statutes.

The Fourteen Day act, which was passed in 1789, and re-enacted with modifications on the 24th of March, 1801, was

passed for the purpose of mitigating the severity of the previous law, by which if a debtor had no property to satisfy the debt he was imprisoned upon final process after the recovery of judgment, and after the issuing and return of an execution against his property unsatisfied; and had to remain in prison until the debt was paid, for there was no other means for his release, nor even any provision for his maintenance and support whilst in prison. The harsh severity of the law, in this respect, may be illustrated by a declaration of justice HYDE in *Many* agt. *Scott* (1 *Mod.*, 132), which I have heretofore had occasion to quote in the *Matter of Andriot* (2 *Daly*, 36), which was in these words: "If a man be taken in execution and lie in prison for debt neither the plaintiff, at whose suit he is arrested, nor the sheriff who took him, is bound to find him meat, drink or clothes; but he must live on his own or on the charity of others, and if no man will relieve him, let him die in the name of God, says the law, and so say I."

The act of 1801 provided for the absolute discharge of a defendant, imprisoned upon an execution for a debt not exceeding twenty-five dollars, after he had been imprisoned for thirty days; and the fourth section provided that a debtor imprisoned upon final execution for a sum not exceeding $500, or who should have remained in jail for the space of three months upon an execution for a sum not exceeding $2,500, and, in the language of the act, if the debtor imprisoned should "in either case be minded to deliver up to the creditor or creditors who shall so charge him in execution all his estate and effects towards satisfaction of the debt or debts with which he stood charged" that he might petition the court, accompanying his petition with the true account of his estate as it existed at the time of exhibiting his petition, giving, also, fourteen days' notice to the creditor by whom he was charged in execution of the time and place when the prisoner would make his application to the court; upon which the court, upon the appearance of the prisoner on the day stated, should, if he thought proper, tender to him an oath that the

account set forth in his petition was in all respects just and true; that he had not at any time or in any manner or way whatsoever disposed of or made over any part of his estate, real or personal, in law or in equity, with the view to the future benefit of himself or family, or with the view or intent to injure or defraud any of his creditors; and the act then declared that if the court should be satisfied that the proceedings on the part of the prisoner were just and fair, that they should then immediately order an assignment of the estate, the account of which was contained in the petition, for the benefit of the creditor who had charged the prisoner in execution, and that upon the prisoner executing the assignment that he should be discharged from custody.

This act made no distinction between the honest but unfortunate and the fraudulent debtor, but either was entitled to be discharged if they complied with its provisions. The purpose of it was to discharge the debtor from imprisonment, if, in the language of the act already quoted, he "was minded" to deliver up all his property to the creditor that it might be applied to the satisfaction of the debt, and did so; it appearing that he had not disposed of any part of it at any time with a view to the future benefit of himself or of his family or with intent to defraud his creditors, and which he was obliged to declare on oath that he had not, if the court required it, which in practice it invariably did. The act precluded no debtor, after three months' imprisonment on final process, from the benefit of the act unless one who had disposed of his property for the future benefit of himself or his family or with an intent to defraud his creditor, and in this respect, but in this alone, distinguished the honest but unfortunate debtor from one who had fraudulently sought to evade the payment of his debts by dishonestly making away with his property. The provision of the act that the court should be satisfied that "the proceedings on the part of the prisoner were just and fair," meant that it should be satisfied that the proceedings in this respect, that is, in respect to his

property, had been just and fair; whereupon, by the language which follows, the court was then immediately to order the estate contained in the account presented by the petition, or so much of it as might be sufficient to satisfy the creditor, to be assigned in the manner provided by the act, which, when done, the prisoner was to be discharged by the court from custody. The act further provided that if the creditor should not be satisfied with the prisoner's oath, and desired further time to inform himself, that a future day should be assigned for the hearing of the parties, and unless the creditor should then be able to satisfy the court that the proceedings on the part of the prisoner were not just and fair, the assignment should be ordered and the prisoner discharged.

This act of 1801 was again modified by the act of April 9, 1813 (1 *Revised Laws of* 1813, 348), and incorporated, with further modifications, in the Revised Statutes; but none of those modifications affect in any way the purpose of the act as respects the proceedings which were required to be just and fair. The Revised Statutes provided a further means of testing the truth of the affidavit which the prisoner is required to make by allowing the court to examine the prisoner himself, his wife, or any other person, on oath, on the day appointed for hearing, and determine in a summary way the proof and allegations of the parties.

I have had a great deal of experience in applications of this kind. Innumerable petitions have been made to this court during the time that I have been in it, for the discharge of persons from imprisonment, in custody upon final process, and the construction uniformly given, over a long number of years, by myself and my colleagues, has been that what is required is that the proceedings of the debtor have been just and fair in respect to the matters that he is required to swear to in the affidavit upon presenting his petition; that they relate to the inquiry whether he has made any such disposition of his property as in the affidavit he is obliged to swear that he has not; or, in other words, whether the judge is

satisfied that the statement made in his affidavit is true, in respect to which the fullest inquiry may be made by the oral examination of the prisoner, under oath, as well as the examination of his wife, or of any witnesses which the creditor has to offer.   This is the construction given to the statute in *The People* agt. *White* (14 *How.*, 500), in which Mr. justice E. DARWIN SMITH says — as I have repeatedly said in these cases — that the affidavit which the prisoner is required to make is a key to the meaning of the words that the judge is to be satisfied that the proceedings on the part of the prisoner have been just and fair; that it must appear, as judge SMITH says, "that the affidavit is true in its letter and spirit, or the proceedings of the applicant cannot be just and fair within the sense and meaning and true intent of the statute."   The only difference in the construction of the statute, until the recent decision in the case of *Roberts* at the special term, referred to in the respondent's points, is that judge SMITH, in the case above referred to, and judge INGRAHAM, in the dissenting opinion *In the Matter of Watson* (2 *E. D. Smith*, 429), is that nothing in the shape of property or interest in property, legal or equitable, existing at the time of the application shall be kept back or withheld from creditors; that this is the condition upon which the law interposes to discharge the debtor from imprisonment — a construction in which judge WOODRUFF and myself did not concur, as, in our opinion, it was engrafting upon the affidavit what was not contained in it — and that any disposition by the debtor of his property made with the intent to defraud existing creditors, was what the affidavit meant; and that the statute intended that any such disposition on the part of the debtor, or any disposal of his property for the future benefit of himself or family, after his application, precluded him from the benefit of the act, a construction which has since been sustained *In the Matter of Brady* (8 *Hun*, 437), which was affirmed by the court of appeals (69 *N. Y.*, 215); and these cases, I think, may be relied upon as sustaining the view that his proceedings are

not just and fair where it appears that he has done any of the acts which by the affidavit he swears he has not done, the sole subject of the statute, as stated by judge EARL, who delivered the opinion of the court of appeals, being the discharge of honest debtors who made an honest and full surrender of all their property for the benefit of all their creditors.

This is, as I have always held, the full scope and intent of this act from its first incorporation in the statutes, and in its several modifications in 1801, 1813, and in the Revised Statutes, and there is nothing in any of its provisions which, in my opinion, would authorize holding that a debtor cannot be discharged because he made a false or fraudulent representation as to the solvency of a person to whom credit was given by the person who has recovered a judgment for damages against the prisoner for the injury thus sustained. Nor is the fact that he applied for his discharge as a bankrupt any such disposition of the property as is contemplated by the act; for such an application is not a disposition of property for the future benefit of himself or family, or to defraud creditors; for whatever property he possesses, under such a proceeding, goes to his creditors. In addition to which there is the fact that he had no property to pass under his assignment in bankruptcy, and the only effect of his application would be to discharge him from his debts.

I think, for these reasons, that the order below should be reversed; that the defendant may be at liberty to renew his application for his discharge from custody.

Order reversed, with costs, and petitioner allowed to renew his application for discharge from imprisonment.

J. F. DALY dissents, for the reasons stated in his opinion *In the Matter of Roberts (ante, p.* 136); opinion of VAN VORST, J., *In Matter of Finck (ante, p.* 145).