Van Hoesen, J.
In the Matter of Finch (59 How. Pr. 145), Judge Van Voest decided that the proceedings of the imprisoned debtor had not been just and fair, because he had spent upon Ms family the proceeds of property that had, to his knowledge, been obtained by theft from the judgment creditor. The debtor himself had not committed the theft, but he had been informed of it before he used the avails of the property for the support of his family. The learned judge was of opinion that an imprisoned debtor who knowingly appropriates to his own use the property of which his judgment creditor has been deprived by embezzle *307 ment should be deemed guilty of disposing of that property with intent to injure and defraud the creditor, though the use that he makes of it would be perfectly innocent if the property were honestly his own. Judge Van Vorst in giving his opinion referred with approval to the decision of Judge J. F. Daly in the Roberts case (8 Daly 95; 59 How. Pr. 136), in which Judge Daly had given with great clearness and force his construction of the meaning of the words “ if the proceedings of the debtor are just and fair.”
In the Matter of Fowler (8 Daly 548), I followed the decision in the Roberts case, though I said that I thought Judge Daly in the Roberts case had, in some obiter observations, misconceived the meaning of the statute.
In my opinion an imprisoned debtor, who had never received any part of the property that the judgment creditor had lost through larceny and fraud, could not be said to have disposed of that property with intent to defraud the creditor. The rule with respect to debtors who had actually received the property of the judgment creditor or its avails was, in my opinion, different; for a disposition of such property with intent to defraud the creditor might fairly be inferred when the debtor used it for his own purposes, and in such a way as to place it beyond the reach of the creditor. The fraudulent disposition of the property which the law was intended to punish must take place after the property has passed under the control of the fraudulent debtor. Though the demand upon which judgment was recovered were a debt fraudulently contracted or a claim for damages for deceit, the discharge of the debtor from imprisonment under an execution could not be denied, unless it were shown that he had at some time made away with his property, with intent to benefit himself or his family in the future or with intent to injure and defraud the creditor. The property may be disposed of before the judgment creditor knows that he has been defrauded, and before he contemplates bringing an action, but in order to bar a discharge, property must be disposed of by the debtor, and that property must be his own.
*308 In the curious case of Suydam v. Belknap (20 Hun 87), thé General Term of the Supreme Court held that if a. trustee embezzled the trust estate, he acquired no title to it, and consequently it was not his own property that he disposed of when he appropriated the trust fund to his own use, and for this reason they held that a discharge could not be denied to a trustee who had converted the trust estate to Ms own purposes. It may be a .question whether a thief should be permitted to escape punishment by alleging that he did not acquire a valid legal title to the goods he stole. And it may also be a question as to whether the trustee, Belknap, did not have a legal title to the estate he held in trust. But, waiving those matters, it seems to follow from the reasoning of the Supreme Court in Suydam v. Belknap that if Belknap had acquired the title to the property he would not have been discharged, though he had lost the property or spent it before he was arrested, so that it was no longer in Ms power to surrender it to the judgment-creditor.
The difficulty in these cases is to discover the intent with' which the debtor had disposed of his property. There is not, in my opinion, a -conclusive presumption in all cases that the debtor who obtains property fraudulently has fraudulently disposed of it because he is not able at the time he applies for his discharge to surrender it to his creditor. If, by inevitable accident, or without fault on his part, he has been deprived of the property, it cannot be said that he has disposed of it. But if it appears that he has disposed of the property, the question arises, With' what intent ? In answering that we apply the rule that a man intends the obvious consequences of his own acts; and the court must draw its conclusions as to the intent from the facts that are in evidence. If a debtor - uses the money that he obtains by fraud in maintaining himself and his family, knowing that the creditor must be the loser, may not the courts infer that he disposed of that property with intent to injure and defraud that creditor? Of course, there may be circumstances that may show that the debtor’s *309 intentions in disposing of the property were not dishonest, and that he had no good reason to believe that the creditor would suffer, though the property was disposed of. Such cases may perhaps occur, and when they do the court will deal with them. But the statute ought not to be so construed as to permit the .thief and the swindler, after spending fourteen days or ninety days on the jail limits, to snap his fingers at the victim and say: “ It is true that I spent the money of which I defrauded you in getting the luxuries and the necessaries of life, but I have not kept any of it, nor have I made any of it. over for my family or myself. The use of your money for my gratification does not prove that I disposed of it with fraudulent intent, and you cannot, if you would, prevent my discharge.”
Applying to this case the rule that I think controlling, the discharge must be refused. Lowell obtained Hoffman’s money by false pretenses, and spent it, intending that Hoffman should lose it and be injured by the loss. Again, he received other moneys which he used in buying property in the name of his wife. He and his wife are residents of New Jersey. They were formerly residents of Massachusetts. Lowell says that in Massachusetts he reduced to possession certain moneys that belonged to his wife. Those moneys he used as his own. Years afterwards, he moved to New Jersey, but conducted business in New York. Subsequent to the incurring of his liability to Hoffman he obtained a considerable sum of money. Tins money he invested in New Jersey, in the name of his wife. He says he did so because-he wished to repay to her the money that he had received on her account in Massachusetts. I see nothing to warrant the belief-that he considered himself his wife’s debtor before he determined to invest his suddenly acquired money in her name. He says that his wife sometimes did not know at what times he received the moneys that belonged to her. He took them without objection on her part, and used them as his own. When he invested ' these moneys in her name he left himself without the means of paying his debts. Such a provision for the wife, under *310 such, circumstances, even though the purpose of the husband was to reimburse his wife for money of hers that he had used in supporting her and himself, seems to me to he making over property “ for the future benefit of himself and. his family.”
The discharge should be denied.
Application denied.